**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVOLVE BIOSYSTEMS, INC.; AND THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a corporation, | |
| Plaintiffs, | Civil Action No. 19-cv-5859 |
| v. | Hon. Judge John Z. Lee |
| | Hon. Magistrate Judge Heather K. McShain |
| ABBOTT LABORATORIES, | |
| Defendant. | |

**ABBOTT LABORATORIES' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**
**PRODUCTION OF PATENT LIST**

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ......................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................... 2

       A.      Mr. Engle's Patent Analysis ............................................................. 2

       B.      Abbott's Discovery Responses ......................................................... 3

       C.      The Parties' Meet-and-Confer .......................................................... 4

III.     LEGAL STANDARD ................................................................................... 5

IV.     ARGUMENT ................................................................................................ 6

       A.      Mr. Engle's Patent Search Is Privileged Information ...................... 6

               1.      This Court Has Already Found That Mr. Engle's Legal Advice Is Privileged ........................................................... 7

               2.      Mr. Engle's Patent Search Was Provided To Mr. Ihochi For The Purpose Of Rendering Confidential Legal Advice ................................... 7

               3.      Abbott Has Not Improperly Shielded Facts from Discovery ...................... 9

       B.      Evolve's Request For Supplementation of Interrogatory No. 17 Is Procedurally Defective And Substantively Meritless ............................................................... 12

               1.      Evolve Has Not Meaningfully Met-And-Conferred ................................ 12

               2.      Abbott Responded To Interrogatory No. 17 By Admitting Its Awareness Of The Patents-in-Suit ............................................................ 13

V.     CONCLUSION ........................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amsted Indus., Inc. v. Nat'l Castings, Inc.*,
No. 88 C 0924, 1990 WL 103286 (N.D. Ill. July 13, 1990) ....................................................9

*Application of Minebea Co., Ltd.*, 143 F.R.D. 494 (S.D.N.Y. 1992) ...........................................8

*Applied Telematics, Inc. v. Sprint Commc'ns Co., L.P.*,
No. CIV. A. 94-4603, 1996 WL 539595 (E.D. Pa. Sept. 18, 1996) ........................................8

*Baxter Int'l, Inc. v. Becton, Dickinson & Co.*,
No. 17-C-7576, 2019 U.S. Dist. LEXIS 125098 (N.D. Ill. Jul. 26, 2019)...................... *passim*

*Burroughs Wellcome Co. v. Barr Labs., Inc*.,
143 F.R.D. 611 (E.D.N.C. 1992) ..............................................................................................8

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,
No. CIVA5:03CV0530(DEP), 2003 WL 22225580 (N.D.N.Y. Sept. 17, 2003) .....................8

*Flagstar Bank, FSB v. Freestar Bank, N.A.*,
No. 09 C 1941, 2009 WL 2706965 (N.D. Ill. Aug. 25, 2009)...................................................9

*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*,
No. 1:14-CV-05696, 2018 WL 505089 (N.D. Ill. Jan. 22, 2018)...........................................12

*Geraci v. Andrews*,
No. 16-C-721, 2017 WL 1822290 ...........................................................................................13

*Gile v. United Airlines, Inc.*,
95 F.3d 492 (7th Cir. 1996) .......................................................................................................6

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016)........................................................................................................13, 14

*Intervet, Inc. v. Merial Ltd.*,
256 F.R.D. 229 (D.D.C. 2009)............................................................................................11, 15

*Kalis v. Colgate-Palmolive Co*.,
231 F.3d 1049 (7th Cir. 2000) .................................................................................................13

*Mai Nhia Thao v. Midland Nat. Life Ins. Co.*,
549 F. App'x 534 (7th Cir. 2013) .............................................................................................15

*Maui Jim, Inc. v. SmartBuy Guru Enterprises*,
No. 16 C 9788, 2018 WL 11219617 (N.D. Ill. May 16, 2018) ...............................................15

*McCook Metals L.L.C. v. Alcoa Inc.*,
  192 F.R.D. 242 (N.D. Ill. 2000)................................................................7

*Medicines Co. v. Mylan Inc.*,
  936 F. Supp. 2d 894 (N.D. Ill. 2013) .......................................................7

*MPT, Inc. v. Marathon Labels, Inc.*,
  No. 1:04 CV 2357, 2006 WL 314435 (N.D. Ohio Feb. 9, 2006) ............8

*New England Speed Factory, LLC v. Snap-On Equip., LLC*,
  438 F. Supp. 3d 867 (N.D. Ill. 2020) ......................................................12

*Oracle Am., Inc. v. Google, Inc.*,
  No. C-10-03561-WHA DMR, 2011 WL 3502481 (N.D. Cal. Aug. 10, 2011) ...............11, 15

*Regeneron Pharms., Inc. v. Merus N.V.*,
  864 F.3d 1343 (Fed. Cir. 2017)................................................................6

*Rohne-Poulenc Rorer Inc. v. Home Indem. Co.*,
  32 F.3d 851 (3rd Cir. 1994) ....................................................................11

*RTC Indus., Inc. v. Fasteners for Retail, Inc.*,
  No. 17-C-3595, 2020 WL 1433828 (N.D. Ill. Mar. 24, 2020) ................8

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*,
  600 F.3d 612 (7th Cir. 2010) ...................................................................6

*In re Spalding Sports Worldwide, Inc.*,
  203 F.3d 800 (Fed. Cir. 2000).........................................................6, 7, 9

*United States v. Evans*,
  113 F.3d 1457 (7th Cir. 1997) ..............................................................6, 7

*WBIP, LLC v. Kohler Co.*,
  829 F.3d 1317 (Fed. Cir. 2016)...............................................................14

**Other Authorities**

Fed. R. Civ. P. 16 ...........................................................................................15

Fed. R. Civ. P. 26(b) .......................................................................................5

Fed. R. Civ. P. 26(b)(1).....................................................................................6

Fed. R. Civ. P. 37(a)(5)(B) ............................................................................15

L.R. 37.2 ...............................................................................................2, 12, 15

## I.     INTRODUCTION

Evolve's latest motion to compel ignores this Court's recent decision dated October 23, 2020, denying Evolve's earlier motion to compel the un-redaction of a PowerPoint slide summarizing legal advice provided by Abbott's in-house counsel, Mr. Mark Engle, to its Director of Venture Partnerships and IP, Mr. Albert Ihochi.  Dkt. 112.  This Court found, after in-camera review of the un-redacted slide and Mr. Engle's declaration of Mr. Engle, that "Engle's legal analysis of Evolve's patent portfolio is protected by the attorney-client privilege."  *Id.* at 4.  Undeterred, the very next business day, Evolve filed this motion to compel production of Mr. Engle's patent search that informed his privileged legal analysis and advice to Mr. Ihochi regarding Evolve's patent portfolio.  Remarkably, Evolve's motion does not discuss, much less distinguish, this Court's prior legal or factual findings on this privilege issue.

Evolve's motion should be denied, primarily because Mr. Engle's patent search is privileged legal analysis and advice.  As Mr. Engle explained in his declaration, he conducted the patent search that Evolve seeks to compel.  *See* Engle Decl., Dkt. 91-1, ¶ 4.  He provided his initial analysis of Evolve's patent portfolio, including the results of his patent search, which was based on confidential client information, to Mr. Ihochi for his evaluation of an opportunity with Evolve. *Id.*  As this Court recognized, "[c]ase law establishes that 'legal advice or strategy from the patent department' is generally 'protected by the attorney-client privilege.'"  Dkt. 112 at 4.  Even Evolve acknowledged in its prior motion to compel that "legal advice communicated from an attorney to a client regarding patents may constitute a privileged communication."  Dkt. 80-1 at 6.  Mr. Engle's patent search is a classic example of a privileged analysis provided by in-house patent counsel.

Evolve incorrectly asserts that Mr. Engle's patent search contains solely factual information that does not qualify as privileged.  Mr. Engle relied on confidential information about Abbott's business strategy to craft a patent search based on his legal assessment of the proper

1

search parameters and strings. This confidential information and his legal strategy are reflected in his patent search results and legal advice conveyed to Mr. Ihochi. The patent search and accompanying correspondence are properly withheld as attorney-client information. As such, Evolve's motion to compel production of Mr. Engle's patent search should be denied.

Evolve's request for Abbott to supplement its response to interrogatory no. 17 similarly lacks merit and should be rejected. In rushing to seek this Court's intervention, Evolve did not fulfill this Court's mandate to meet-and-confer under LR 37.2. Evolve's request should be denied on this basis alone. As a direct result of its failure to meaningfully meet-and-confer, Evolve has misconstrued Abbott's position on privilege. To be clear, Abbott has not claimed privilege over its awareness of the patents-in-suit or other purely factual information. In fact, Abbott specifically disclosed this information in its discovery responses, privilege log, and Mr. Engle's declaration. However, information about **how** Mr. Engle conducted his patent search, the **results** of the patent search that reveal his legal strategy, and his ***legal advice*** informed by this patent search are privileged information. Abbott has admitted to knowledge of the patents-in-suit prior to any alleged act of infringement by its Similac® Probiotic Tri-Blend product—additional information regarding Mr. Engle's privileged search and advice beyond what has been provided in Abbott's privilege log is not discoverable.

## II.     FACTUAL BACKGROUND

### A.      Mr. Engle's Patent Analysis

As this Court is aware (Dkt. 112 at 1-2), in 2019, Abbott was evaluating a potential partnership for co-promotion of Evolve's Evivo® product. *See* Engle Decl., Dkt. 91-1, ¶ 3. As part of this assessment, Mr. Engle, an attorney and Abbott's Senior Counsel-Patents, was asked to advise on Evolve's patent portfolio. *Id.* ¶¶ 2-4. He crafted a patent search with parameters and strings based on Abbott's confidential information regarding its business objectives. *Id.* ¶ 4. He

relied on that patent search to provide his initial analysis of Evolve's patent portfolio based on his legal knowledge and training of patent law.  *Id.*

On May 2, 2019, Mr. Engle sent the results of his patent search and his legal advice to Mr. Ihochi, and they orally discussed Mr. Engle's initial legal impressions of Evolve's patent portfolio. *Id.*  Mr. Engle's email correspondence to Mr. Ihochi and his patent search results reveal Mr. Engle's legal strategy that informed his advice to Mr. Ihochi.  *Id.*

On August 18, 2020, Abbott appropriately logged Mr. Engle's privileged e-mail communication and attached patent search in Abbott's Second Privilege Log as entry nos. 5 and 6.  *See* Evolve Ex. 1.[1]

## B.    Abbott's Discovery Responses

Abbott has not claimed privilege over the fact of its awareness of the patents-in-suit.  For example, on September 24, 2020, Abbott served its responses to Evolve's Third Set of Requests for Admissions and Second Set of Interrogatories.  Abbott admitted that it was aware of the patents-in-suit before their assertion in the present patent litigation, as well as prior to Abbott's commercial launch of its Similac® Probiotic Tri-Blend product.  Abbott Ex. A, Resp. to RFAs 58-61, at 22-23.  Likewise, Abbott explained in its response to interrogatory no. 17 that "it had knowledge of the Patents-in-Suit prior to the first sale of Similac® Probiotic Tri-Blend, including knowledge of the Patents-in-Suit at least as early as May 2019."  Evolve Ex. 2 at Resp. to Rog. 17, at 35.  Thus, Abbott has already admitted that it knew about the patents-in-suit before any accused act of infringement—thus, this is not a disputed issue in the case.

In its response to interrogatory no. 17, in addition to acknowledging its awareness of the

---

[1] Evolve's exhibits identified by number refer to exhibits attached to the Declaration of Evolve's counsel Matthew Chivvis (Dkt. 113-1, 114).  Abbott's exhibits identified by letter refer to exhibits attached to the Declaration of Abbott's counsel Dan Hoang, filed concurrently with this opposition.

patents-in-suit, Abbott objected that "the details of the circumstances under which Abbott first became aware of the Asserted Patents including the persons who first became aware of the Asserted Patents, the dates of first awareness of the Asserted Patents, and how each person became aware of the Asserted Patents are not relevant to any of the claims or defenses in this litigation." *Id.* at 34. Abbott further objected to the extent that Evolve's interrogatory seeks information protected by attorney-client privilege. *Id.* Abbott has maintained both objections based on relevance and privilege.

### C. The Parties' Meet-and-Confer

On October 15, 2020, after appearing before this Court at the motion hearing for Evolve's prior motion to compel, the parties met-and-conferred to discuss their discovery objections. Evolve Ex. 3. Prior to the meet-and-confer, the parties had exchanged agendas listing which topics the parties should be prepared to discuss. Abbott Ex. B. Evolve stated that it wanted to discuss the production of Mr. Engle's patent search that was the subject of its prior motion to compel:

> Production of the list of patents provided to Albert Ihochi on May 2, 2019, as disclosed in Abbott's second privilege log (responsive to at least Request for Email No 3 and RFP 69)

*Id.* In its agenda, Evolve did not identify its interrogatory no. 17, or otherwise articulate any deficiency in Abbott's response to this interrogatory. *Id.*

Evolve started its portion of the meet-and-confer by discussing "the production of the list of patents provided to Albert Ihochi on, we believe, May 2nd 2019." Evolve Ex. 3 at 79:25-80:6. Evolve stated that Mr. Engle's patent search is relevant to email requests and RFP 69 and noted for the first time that the patent search was "relevant to an interrogatory [Evolve] asked [Abbott] about the awareness of the patents." *Id.* Evolve, however, did not identify by number which interrogatory it was referring to. *Id.* at 79:19-81:25. Evolve requested "confirm[ation] that [Mr. Engle's patent search] was provided to Albert Ihochi," *id.* at 80:11-16, which Abbott had already

confirmed in its second privilege log and Mr. Engle's declaration.

Evolve further asked Abbott to produce Mr. Engle's patent search in light of *Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, No. 17-C-7576, 2019 U.S. Dist. LEXIS 125098 (N.D. Ill. Jul. 26, 2019), which Evolve had identified for the first time in the hearing before this Court less than an hour before the meet-and-confer. *Id.* at 80:7-13. As Abbott explained at the hearing before this Court and to Evolve in the meet-and-confer, Abbott has not asserted privilege over the date of its awareness of the patents-in-suit, but would need an opportunity to review the *Baxter* case. Abbott Ex. C, Hr'g Tr. at 15:14-25; Evolve Ex. 3 at 80:17-81:25. Evolve continued with other issues on the meet-and-confer without discussing any alleged deficiencies in interrogatory no. 17.

On October 20, 2020, Abbott explained by email why *Baxter* does not support Evolve's request to produce Mr. Engle's patent search:

> [*Baxter*] does not support [Evolve's] request that Abbott produce the document identified in its privilege log as entry no. 6. In that case, the court found that information identifying when the defendant first became aware of the patents-in-suit is not privileged, but the court did not order production of the underlying privileged documents identified on that defendant's privilege log. *Id.* at *10. Abbott has not claimed privilege over the date of its first awareness of the patents-in-suit and has provided substantive responses to Evolve's discovery requests on this issue. *See* Abbott's Resp. to Interrogatory No. 17; Abbott's Resp. to RFA Nos. 58-61.

Evolve Ex. 5. As reflected in Abbott's email, the sufficiency of its response to interrogatory no. 17 was not an outstanding issue from the parties' meet-and-confer. *Id.* Evolve never followed up from the meet-and-confer to raise any objection to Abbott's response to interrogatory no. 17. Nor did Evolve articulate to Abbott what it alleged was deficient in the interrogatory response before running to the Court.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case." Fed. R. Civ. P. 26(b)(1); *see Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996). "The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The Seventh Circuit has summarized "the essential general principles governing the privilege":

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).[2] Abbott, as "the party seeking to invoke the privilege[,] bears the burden of proving all of its essential elements." *Id.*

## IV.  ARGUMENT

### A.  Mr. Engle's Patent Search Is Privileged Information

Mr. Engle's patent search provided to Mr. Ihochi is a classic example of attorney-client privileged information that meets each of the *Evans* elements. Mr. Ihochi, on behalf of Abbott, sought legal advice regarding Evolve's patent portfolio from Abbott's in-house attorney, Mr. Engle, for purposes of evaluating the Evolve opportunity. *See* Engle Decl., Dkt. 91-1, ¶ 4 (*Evans* elements 1 and 2). Mr. Engle conducted a patent search based on confidential information about Abbott's business strategy and provided his legal advice—contained in his email, with his patent search attached and discussed orally—to Mr. Ihochi. *Id.* ¶¶ 4-5 (*Evans* element 3). Mr. Engle's email is marked as attorney-client privileged and confidential. Mr. Engle's legal advice was made in confidence to Mr. Ihochi on behalf of Abbott. *Id.* (*Evans* elements 4 and 5). Abbott has

---

[2] In patent cases, Federal Circuit law governs privilege disputes that relate to an issue of substantive patent law; otherwise, Seventh Circuit law applies. *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1363 n.6 (Fed. Cir. 2017); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803-04 (Fed. Cir. 2000).

maintained that confidence within Abbott without waiver. *Id.* ¶¶ 5-6 (*Evans* elements 6, 7, and 8).

### 1. This Court Has Already Found That Mr. Engle's Legal Advice Is Privileged

In adjudicating Evolve's prior motion to compel the un-redaction of documents summarizing the advice Mr. Engle provided to Mr. Ihochi, this Court evaluated whether—and found that—Mr. Engle's advice was legal advice and protected by attorney-client privilege. Dkt. 112. As this Court explained, "legal advice or strategy from the patent department is generally protected by the attorney-client privilege." *Id.* at 4 (citing *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000)). This Court found that "Engle's legal analysis of Evolve's patent portfolio is protected by the attorney-client privilege." *Id.* In particular, because "Engle shared his legal analysis of the portfolio in confidence with Ihochi," that "legal advice that Engle shared with Ihochi is thus privileged." *Id.* Remarkably, Evolve does not mention this Court's prior decision, even though Evolve now seeks to compel production of the same patent search that Mr. Engle provided to Mr. Ihochi informing his legal advice.

### 2. Mr. Engle's Patent Search Was Provided To Mr. Ihochi For The Purpose Of Rendering Confidential Legal Advice

In determining privilege, "the central inquiry is whether the communication is one that was made … for the purpose of obtaining [or giving] legal advice or services." *Spalding*, 203 F.3d at 805; *see Medicines Co. v. Mylan Inc.*, 936 F. Supp. 2d 894, 901 (N.D. Ill. 2013). Mr. Engle's patent search meets this test. He conducted a patent search with parameters and search terms based on confidential information relating to Abbott's business strategy. This confidential information is reflected in the summary and analysis authored by Mr. Engle and conveyed to Mr. Ihochi via email and orally for the purposes of providing legal advice regarding Evolve's patent portfolio. Mr. Engle's patent search is properly withheld as attorney-client privileged information that discloses his legal search strategy, procedure, and results from this patent search and reveals

Abbott's confidential information. *See RTC Indus., Inc. v. Fasteners for Retail, Inc.*, No. 17-C-3595, 2020 WL 1433828, at *17 (N.D. Ill. Mar. 24, 2020) (finding that discussions of patent searches revealing legal "strategy, procedure, and results of the searches" are privileged).

Courts have consistently protected as privileged searches for patents and prior art conducted by or sent to patent attorneys that were conducted for the purposes of rendering or obtaining legal advice from counsel. As the Northern District of Ohio remarked, "a brief review of cases decided by other courts includes a number of instances where a patent search report was protected by the attorney-client privilege." *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04 CV 2357, 2006 WL 314435, at *4 (N.D. Ohio Feb. 9, 2006) (finding that a prior art "search report is covered by the attorney-client privilege"); *see, e.g.*, *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 143 F.R.D. 611, 616 (E.D.N.C. 1992) ("[T]he court has extended the attorney-client privilege to prior art searches and discussions and documents related to the prior art if they contain or reflect communications made in connection with requests for legal advice or a legal opinion as to patentability."); *Applied Telematics, Inc. v. Sprint Commc'ns Co., L.P.*, No. CIV. A. 94-4603, 1996 WL 539595, at *6 (E.D. Pa. Sept. 18, 1996) (finding that a letter "reporting results of patent search and providing patentability opinion … is a legal opinion and contains legal analyses" and thus was "protected from discovery by the attorney-client privilege"); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, No. CIVA5:03CV0530(DEP), 2003 WL 22225580, at *4 (N.D.N.Y. Sept. 17, 2003) (reasoning that a prior art search conducted by a non-attorney patent agent was privileged because "had the prior art search been performed by the prosecution attorney, or someone within his or her firm, in all likelihood it would have been deemed worthy of attorney-client protection"); *Application of Minebea Co., Ltd.*, 143 F.R.D. 494, 502 (S.D.N.Y. 1992) (finding that there was "no question" that a letter "conveying the results of [a prior art] search and an opinion as to

patentability of the patents-in-suit" was "legal in nature" and privileged).

In the related field of trademark searches, this District has also found that an attorney's use of "confidential information to conduct trademark searches, generate search reports, and communicate his findings to [his client]" was protected by the attorney-client privilege. *Flagstar Bank, FSB v. Freestar Bank, N.A.*, No. 09 C 1941, 2009 WL 2706965, at *4 (N.D. Ill. Aug. 25, 2009). Whether in the context of patent or trademark searches, this Court should find "that documentation evidencing the performance of [] searches and the resulting search reports themselves are, in this case, protected by the attorney-client privilege." *Id.*

The "overall tenor" of Mr. Engle's patent analysis was to provide legal advice, and it is not appropriate to "dissect" his patent search from the rest of his analysis. *Spalding*, 203 F.3d at 806 (prior art lists provided with legal advice are privileged). Both are inextricably linked and privileged. Protecting Mr. Engle's legal analysis and results of his patent search serves the policy goals behind the attorney-client privilege. As here, exchanges between attorney and client for the purpose of obtaining legal advice "are not normally made with the knowledge or intent that they may or will be made public—to the contrary, they are typical of the types of traditional attorney-client communications which the participants expect are made and will be kept in confidence." *Amsted Indus., Inc. v. Nat'l Castings, Inc.*, No. 88 C 0924, 1990 WL 103286, at *4 (N.D. Ill. July 13, 1990). Revealing this patent analysis would hinder the free and frank communication between client and attorney, and thus, the patent search results are "inappropriate for disclosure." *Id.*

### 3. Abbott Has Not Improperly Shielded Facts from Discovery

Evolve asserts that the "patent list contains solely factual information" and thus "does not qualify for privilege." Evolve Br. at 1. Mr. Engle's patent search and legal advice is not a mere "patent list," as Evolve has mischaracterized. Evolve conflates discoverable facts with privileged communications that advise based on facts. To be clear, Abbott has disclosed in its privilege log

the discoverable facts relating to Mr. Engle's patent search. What Evolve seeks to compel is Mr. Engle's privileged attorney-client communication and legal analysis, which are not discoverable.

Evolve primarily relies on *Baxter* to assert that Abbott must produce Mr. Engle's privileged patent search. Evolve Br. at 3. But Evolve mischaracterizes the decision and misapplies its holding to the facts of the present dispute. In *Baxter*, the plaintiff moved to compel for a "more detailed privilege log that identifies the specific subject matter of documents withheld or redacted," particularly identification of which log entries pertained to the patents-in-suit. *Baxter Int'l, Inc.*, 2019 WL 3408813, at *1, 2. Evolve quotes the *Baxter* court's statement that "the circumstances surrounding an accused infringer's discovery of a patent 'are not in themselves protected by the attorney-client privilege,'" Evolve Br. at 3, but the court was specifically referring to "'the circumstances surrounding when [the accused infringer] first became aware of the patents-in-suit.'" *Baxter Int'l, Inc.*, 2019 WL 3408813, at *4. This does not apply to the present dispute. Abbott agrees that the date of awareness of the patents-in-suit is not privileged, and Abbott has not asserted privilege over this fact. Indeed, Abbott has admitted in requests for admission and interrogatories that it had knowledge of the patents-in-suit at least as early as May 2019, which is before any time relevant to Evolve's infringement claims following the launch of Abbott's Similac® Probiotic Tri-Blend in August 2019. *See* Abbott Ex. A, Resp. to RFAs 58-61, at 22-23; Evolve Ex. 2 at Resp. to Rog. 17, at 35.

That the objective fact of the date of first awareness of the patents-in-suit is discoverable, however, does not mean that any underlying privileged communication relating to that first awareness is also discoverable. Indeed, the *Baxter* court upheld the long-standing principle that "the attorney-client privilege … attaches to confidential communications that constitute legal advice or that 'tend directly or indirectly to reveal the substance of a client confidence.'" *Baxter*

*Int'l, Inc.*, 2019 WL 3408813, at *5. While the court ordered the accused infringer to supplement its privilege log to disclose which entries related to the asserted patents, the court did not order the production of the underlying privileged documents. *Id.* Thus, *Baxter* does not support Evolve's requested relief for production of Mr. Engle's privileged patent search.

Evolve cites three other cases that stand for the same unremarkable principle that purely factual information that would be found on a privilege log is not privileged. *See, e.g.*, *Intervet, Inc. v. Merial Ltd.*, 256 F.R.D. 229, 233 (D.D.C. 2009) (explaining that factual information describing "the circumstances" by which the accused infringer discovered the accused patent, such as the names, dates, and whether the patent was discovered by an attorney, are not privileged); *Oracle Am., Inc. v. Google, Inc.*, No. C-10-03561-WHA DMR, 2011 WL 3502481, at *1 (N.D. Cal. Aug. 10, 2011) (explaining that attorney-client privilege does not protect the facts of "when and how" the accused infringer learned of the patent); *see Rohne-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3rd Cir. 1994) (explaining that "[f]acts are discoverable, [but] the legal conclusions regarding those facts are not"). None of these cases required the disclosure of any underlying privileged communication. In fact, the *Intervet* court acknowledged that "[a]ny advice sought from [its European patent attorney] that would tend to reveal a confidential communication is properly withheld as privileged." 256 F.R.D. at 232. So too here. Mr. Engle's search results reflect and reveal his legal search strategy and parameters and, thus, were properly withheld as privileged. Abbott disclosed the discoverable facts underlying his patent search in its privilege log (and in Mr. Engle's Declaration). Evolve has not asserted that the factual information provided in Abbott's privilege log is deficient. Instead, Evolve seeks to compel production of Mr. Engle's patent search, which has properly been logged and withheld as privileged.

**B.** **Evolve's Request For Supplementation of Interrogatory No. 17 Is Procedurally Defective And Substantively Meritless**

**1.** **Evolve Has Not Meaningfully Met-And-Conferred**

Local Rule 37.2 requires that every motion to compel include a statement that the parties made "good faith attempts to resolve differences" and that "attempts to engage in such consultation were unsuccessful due to no fault" of the moving party. *New England Speed Factory, LLC v. Snap-On Equip., LLC*, 438 F. Supp. 3d 867, 868 (N.D. Ill. 2020) (quoting Local Rule 37.2).

Evolve did not engage in good-faith attempts to resolve differences with respect to interrogatory no. 17 before filing its motion to compel. Before the meet-and-confer, the parties exchanged lists of discovery issues to discuss. Abbott Ex. B. Evolve did not identify interrogatory no. 17 before the conference. *Id.* Nor did Evolve identify this interrogatory by number during the meet-and-confer. *See* Evolve Ex. 3, 79:19-81:25. While Evolve contended during the meet-and-confer that production of Mr. Engle's patent list relates to an interrogatory about Abbott's awareness of the patents, Evolve did not object on the ground that the interrogatory was deficient. Nor did Evolve seek anything other than the production of Mr. Engle's patent list. *Id.* at 79:25-26. The parties did not substantively discuss interrogatory No. 17. *Id.* at 79:19-81:25. After the meet-and-confer, Evolve again did not raise any objection to the sufficiency of Abbott's response to interrogatory no. 17, even though the parties discussed Mr. Engle's patent list. Evolve Ex. 5.

In the Northern District of Illinois, merely "notifying another party that a dispute potentially may be the subject of motion practice does not amount to an attempt to resolve that dispute." *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 1:14-CV-05696, 2018 WL 505089, at *2 (N.D. Ill. Jan. 22, 2018). But Evolve did not even notify Abbott that interrogatory no. 17 was potentially the subject of motion practice before it filed. Because Evolve failed to substantively meet and confer, this issue is not properly before the Court.

*Baxter Int'l, Inc.*, 2019 WL 3408813, at *2 ("[T]he parties have not met and conferred about issues regarding BD's log entry descriptions … these issues are not properly before us at this time."). This Court should exercise its discretion to deny Evolve's discovery motion relating to interrogatory no. 17. *Geraci v. Andrews*, No. 16-C-721, 2017 WL 1822290, at *1 (citing *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1059 (7th Cir. 2000)).

### 2. Abbott Responded To Interrogatory No. 17 By Admitting Its Awareness Of The Patents-in-Suit

In response to Interrogatory No. 17, Abbott admitted that "it had knowledge of the Patents-in-Suit prior to the first sale of Similac® Probiotic Tri-Blend, including knowledge of the Patents-in-Suit at least as early as May 2019." Evolve Ex. 2 at 35. Evolve argues that Abbott's response is deficient, because Abbott has not produced Mr. Engle's patent search or further described how Abbott became aware of the patents-in-suit, which it alleges is "highly relevant to willfulness." Evolve Br. at 2. But Abbott has identified its first awareness of the patents-in-suit and admitted to its awareness prior to any accused act of infringement. Additional discovery regarding how Abbott became aware of the patents-in-suit, which also implicates privileged advice, is not relevant to any disputed issue regarding willfulness.

Willful infringement arises only in the limited circumstances of "egregious cases of misconduct beyond typical infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016). Accordingly, willful infringement is "generally reserved for egregious cases of culpable conduct" that can be described as "willful, wanton, malicious, bad-faith, deliberate, conscious wrongful, flagrant, or – indeed – characteristic of a pirate." *Id.* at 1932. Willful infringement requires the "subjective willfulness of a patent infringer, intentional or knowing" that it infringes. *Id.* at 1933.

Abbott disputes Evolve's willfulness allegations not on the basis that Abbott lacked

13

awareness of the patents-in-suit, but rather because there has been no infringement. Indeed, more than one year into this litigation, Evolve *still* cannot identify a single act of direct infringement or otherwise plead or contend any infringement by Abbott, which is the subject of Abbott's pending motion to dismiss the Amended Complaint and motion to strike Evolve's Final Infringement Contentions. *See* Dkt. 32, 33, 43, 117, 118. If Evolve cannot even identify any accused act of direct infringement, Abbott cannot be accused in good faith of having knowingly induced or contributed to such infringement, much less having willfully infringed the patents-in-suit.

Even putting aside the fact that Evolve's contention of willful infringement is hopeless, its current request for production of Mr. Engle's patent list and further description of how Abbott became aware of the patents-in-suit is not relevant to any claim or defense in this case and not proportional to the needs of the case. Evolve Br. at 2. Again, Abbott's knowledge of the patents-in-suit is not at issue in this case. In responding to interrogatory no. 17 and other requests for admission, Abbott has already identified its first awareness of the patents-in-suit as early as May 2019 and has acknowledged that it had this awareness prior to any accused act of infringement resulting from the sale of Similac® Probiotic Tri-Blend and prior to the filing of this suit. Abbott Ex. A, Resp. to RFAs 58-61, at 22-23; Evolve Ex. 2 at Resp. to Rog. 17, at 35. Thus, Abbott has admitted to having knowledge of the patents-in-suit before any time relevant to Evolve's infringement claims, including its willful infringement allegations. *See Halo* 136 S. Ct. at 1933 (For willful infringement, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct."). This knowledge element is Evolve's only justification requesting that Abbott's Interrogatory Response be supplemented. Evolve Br. at 2 (citing to the knowledge requirement in *Halo* and *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016)). But no additional discovery is necessary to prove what Abbott has readily admitted.

Additional discovery regarding how Abbott became aware of the patents-in-suit, which implicates privileged advice, is not relevant to any disputed issue regarding willfulness and is not proportional to the needs of the case. Indeed, each of the cases that Evolve cites permitting discovery of the "circumstances" of an accused infringer's first knowledge of the accused patents was in the context of cases disputing knowledge of the patents-in-suit at the time of infringement and the court-ordered disclosure of information that would have been provided on a privilege log. *See Baxter*, 2019 WL 3408813, at *4; *Intervet*, 256 F.R.D. at 233; *Oracle*, 2011 WL 3502481, at *1. Abbott has provided this information. Evolve has not identified what additional non-privileged information requested in interrogatory no. 17 is relevant to willfulness, when knowledge of the patents-in-suit during the period of alleged infringement is not disputed. For this reason, Evolve's Motion to Compel a Supplemental Response to Interrogatory No. 17 should be denied.

## V.    CONCLUSION

Evolve's motion to compel the production of the challenged patent list and to supplement response to Interrogatory No. 17 should be denied. Because Evolve brought this motion without substantial justification, including failing to address this Court's prior decision regarding privilege of the same legal advice and failing to meet-and-confer regarding interrogatory no. 17, Abbott requests that this Court, under Fed. R. Civ. P. 16 and 37(a)(5)(B), grant relief to Abbott that this Court deems appropriate, including payment of Abbott's fees in responding to this motion. *See Mai Nhia Thao v. Midland Nat. Life Ins. Co.*, 549 F. App'x 534, 540 (7th Cir. 2013) (affirming sanctions after finding that motion to compel was not substantially justified); *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, No. 16 C 9788, 2018 WL 11219617, at *2 (N.D. Ill. May 16, 2018) (ordering sanctions for failure to comply with LR 37.2 and filing an unfounded motion).

Dated: November 10, 2020              By:  /s/ *Nimalka R. Wickramasekera*

                                          Nimalka R. Wickramasekera
                                          WINSTON & STRAWN LLP
                                          333 South Grand Ave.
                                          Los Angeles, CA 90071
                                          Telephone: (213) 615-1700
                                          Facsimile: (213) 615-1750
                                          Email: nwickramasekera@winston.com

                                          Charles B. Klein (admitted *pro hac vice*)
                                          WINSTON & STRAWN LLP
                                          1901 L Street, NW
                                          Washington, DC 20036
                                          Telephone: (202) 282-5000
                                          Facsimile: (202) 282-5100
                                          Email: cklein@winston.com

                                          Michael R. Rueckheim
                                          WINSTON & STRAWN LLP
                                          275 Middlefield Road, Suite 205
                                          Menlo Park, CA 94025
                                          Telephone: (650) 858-6500
                                          Facsimile: (650) 858-6555
                                          Email: mrueckheim@winston.com

                                          Dan H. Hoang
                                          WINSTON & STRAWN LLP
                                          35 W. Wacker Drive
                                          Chicago, IL 60601-9703
                                          Telephone: (312) 558-5600
                                          Facsimile: (312) 558-5700
                                          Email: dhoang@winston.com

                                          *Attorneys for Defendant*
                                          *Abbott Laboratories*

## **CERTIFICATE OF SERVICE**

I certify that on this 10th day of November, 2020, a true and correct copy of the foregoing was served via email upon Plaintiffs' counsel of record.

*/s/        Dan H. Hoang*