# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

EVOLVE BIOSYSTEMS, INC., ET AL.,

      Plaintiffs,

   v.

ABBOTT LABORATORIES, INC.,

      Defendant.

No. 19 CV 5859

District Judge Lee

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion filed by plaintiffs Evolve Biosystems, Inc., and the Regents of the University of California to compel defendant Abbott Laboratories to produce a patent list that Abbott has withheld on the basis of the attorney-client privilege. [113].[1] Plaintiffs also seek an order compelling Abbott to supplement its response to plaintiffs' Interrogatory No. 17. The motion is fully briefed [128, 138], and the Court has conducted an in-camera review of the patent list [155, 157]. For the following reasons, the motion is granted in part and denied in part.

## Background

As the Court explained in its order resolving plaintiffs' first motion to compel [112], this patent-infringement suit arises out of the parties' failed plans to co-promote Evolve's EVIVO® probiotic product, which is used in neonatal intensive care units, alongside Abbott's Similac® line of infant care products. Evolve and Abbott entered into discussions about the co-promotion opportunity in 2018. Albert Ihochi, Abbott's former Director of Venture Partnerships and IP for its Nutrition Research and Development Group, led the evaluation opportunity. [91-1] 1-2, ¶ 3. In the spring of 2019, Ihochi approached Abbott's Senior Counsel for Patents, Mark Engle, and asked him to "review Evolve's patent portfolio for the purposes of [Ihochi's] evaluation

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The Court has found it necessary to refer to several sealed filings that the parties have designated "highly confidential," but the Court has attempted to do so without revealing any information that could be reasonably deemed confidential. To the extent the Court has discussed confidential information, however, the Court has done so because it is necessary to explain the path of its reasoning. *See In re Specht,* 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell,* 220 F.3d 562, 568 (7th Cir. 2000).

of the Evolve opportunity." [*Id.*] 2, ¶ 4. Engle "orally discussed with Mr. Ihochi in confidence [his] initial analysis of Evolve's patent portfolio based on [his] legal knowledge and training of patent law." [*Id.*].

Engle also sent Ihochi "the results of a patent search that [he] had conducted" [*id.*], and it is this document that plaintiffs target in their motion to compel. [*Id.*]. According to Abbott's Second Privilege Log, the results of Engle's search are contained in an Excel spreadsheet that Engle prepared and emailed to Ihochi on May 2, 2019. [114-1] 6. Abbott has withheld the spreadsheet on the ground that it "convey[s] confidential legal advice regarding patent analysis[.]" *Id.*

## Legal Standard

"In patent cases, Federal Circuit law governs privilege disputes that relate to an issue of substantive patent law; otherwise, Seventh Circuit law applies." *RTC Indus., Inc. v. Fasteners for Retail, Inc.*, Case No. 17 C 3595, 2020 WL 1433828, *1 (N.D. Ill. Mar. 24, 2020) (citing *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1363 n.6 (Fed. Cir. 2017)). Because this dispute does not appear to implicate substantive patent law, and because the parties do not cite any Federal Circuit law, the Court applies Seventh Circuit law.

"The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). "The privilege applies to communications both by a client to a lawyer and from a lawyer to a client." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993). The Seventh Circuit has summarized "the essential general principles governing the privilege" as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

"The attorney-client privilege applies only if [the communications] constitute legal advice or tend directly or indirectly to reveal the substance of a client confidence." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D. Ill. 2020) (internal quotation marks omitted). "Many cases note that facts are not protected by attorney-client privilege; in other words, the underlying facts communicated between an attorney and a client can be discovered through depositions or other discovery techniques." *Toyo Tire & Rubber Co., Ltd. v. Atturo*

*Tire Corp.*, Case No. 14 C 206, 2016 WL 3125004, at *2 (N.D. Ill. June 3, 2016). "[F]acts do 'not become privileged just because they are communicated to or by a lawyer.'" *Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, Case No. 17 C 7576, 2019 WL 3408813, at *4 (N.D. Ill. July 26, 2019) (quoting *Intervet, Inc. v. Merial Ltd.*, 256 F.R.D. 229, 232-33 (D.D.C. 2009)).

"The party seeking to invoke the privilege bears the burden of proving all of its essential elements." *Id.* "Rule 26 mandates that a withholding party make a claim of privilege expressly and 'describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *DeLeon v. Reyes-Guevara*, Case No. 1:18-cv-01028, 2020 WL 3050230, *3 (N.D. Ill. June 8, 2020) (quoting Fed. R. Civ. P. 26(b)(5)(A)).

"[B]ecause the privilege is in derogation of the search for truth, it is construed narrowly." *Evans*, 113 F.3d at 1461.

## Discussion

## A. Patent List

Plaintiffs argue that the attorney-client privilege does not protect the patent list because the list "contains solely factual information." [114] 2. Plaintiffs contend that the list is relevant to show when Abbott first learned of Evolve's patents, and that case law recognizes that "'the circumstances surrounding an accused infringer's discovery of a patent are not in themselves protected by the attorney-client privilege.'" [*Id.*] 4 (quoting *Baxter*, 2019 WL 3408813, at *3). While plaintiffs acknowledge that the list was prepared by an attorney, they maintain that "circumstances regarding an accused infringer's knowledge of a patent-in-suit are not privileged 'even if [the] accused infringer first becomes aware of a patent through its attorney.'" *Id.* (quoting *Baxter*, 2019 WL 3408813, at *4).

Abbott responds that Engle's patent search constitutes "privileged legal analysis and advice." [128] 5. This is so, Abbott argues, because Engle "relied on confidential information about Abbott's business strategy to craft a patent search based on his legal assessment of the proper search parameters and strings." [*Id.*] 5-6. Abbott maintains that Evolve's contention that the patent list contains only factual information is "incorrect" because "confidential information about Abbott's business strategy" as well as Engle's "legal strategy are reflected in [the] patent search results[.]" *Id.* Because producing the patent list would thereby disclose Abbott's confidential information and Engle's legal strategy, Abbott maintains that the patent list is protected by the attorney-client privilege. [*Id.*] 6, 11-12.

In their reply, plaintiffs contend that Abbott's arguments are misguided because their motion does "not seek[ ] attorney advice, thoughts, or mental impressions," nor does it seek "production of the email" that Engle sent to Ihochi "or Mr. Engle's legal advice." [138] 2, 3. Rather, plaintiffs seek only the patent list itself, which "contains only factual information about Plaintiffs' published patents." [*Id.*] 3.

Having considered the parties' arguments and reviewed the relevant case law, and having conducted an in-camera review of the spreadsheet at issue, the Court finds that the patent list is not protected by the attorney-client privilege and must be produced.

First, it is important to clarify that plaintiffs seek production of only the patent list itself, and not the "[a]ccompanying correspondence," [128] 6, between Engle and Ihochi, the search terms that Engle created or implemented, or any legal analysis Engle might have made of the patent list.

Second, the Court makes the following factual findings based on its in-camera review of the patent list. The patent list, which Abbott produced in PDF format, is a 993-page document that contains factual information about 645 different patents, including nine of Evolve's patents. For each patent, the list identifies (1) the patent's publication number; (2) the patent's kind code; (3) the patent's title; (4) the patent's assignee; (5) an Innography link or URL; and (6) the patent's independent claims. [157]. The list does not appear to contain any notations or commentary made by Engle – let alone any legal analysis of the contents of the patent list. Moreover, while Abbott claims that the entire document is privileged, its opposition brief does not identify any particular information or categories of information within the patent list as constituting a privileged attorney-client communication. Nor, finally, did Abbott submit a privilege log or other document with the patent list identifying any particular entry or category in the list as privileged material. Accordingly, the Court finds that the patent list contains only factual information about 645 patents.

Third, in light of these findings, the Court holds that the patent list is not privileged because it contains only factual information. "[F]acts are not protected by attorney-client privilege," *Toyo Tire & Rubber*, 2016 WL 3125004, at *2, and "facts do 'not become privileged just because they are communicated to or by a lawyer,'" *Baxter*, 2019 WL 3408813, at *4. Rather, "[c]ommunications from an attorney to a client are protected by the privilege only to the extent that they reveal confidential information provided by the client." *In re Brand Name Prescription Drugs Antitrust Litig.*, 94 C 897, 1995 WL 663684, at *6 (N.D. Ill. Nov. 3, 1995). But the patent list here reveals only factual information generated by Engle's patent search, not any client confidences that Ihochi may have shared with Engle. *Accord Baxter*, 2019 WL 3408813, at *4 ("the mere existence of a patent is a fact").

Abbott contends that courts have held that the attorney-client privilege protects "searches for patents and prior art conducted by or sent to patent attorneys that were conducted for the purposes of rendering or obtaining legal advice from counsel," [128] 12, but the cases on which it relies do not support that proposition or Abbott's privilege claim. Rather, the cases generally hold that a patent search report may be privileged if it contains a client confidence or an attorney's legal opinion, but the purely factual results generated by a patent search are not privileged

For example, Abbott cites *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04 CV 2357, 2006 WL 314435, at *3 (N.D. Ohio Feb. 9, 2006), as a case holding that "a patent search report was protected by the attorney-client privilege." In *MPT*, outside counsel hired by the law firm prosecuting plaintiff's patent application conducted a prior art search. 2006 WL 314435, at *1. Outside counsel then submitted a "search report . . . to the prosecuting firm [that] listed references that might be relevant to the [plaintiff's] invention as well as a narrative comparing the invention to the references." *Id.* Notably, plaintiff "provided [the defendant] with a list of the references" contained in the search report, "but claim[ed] that the narrative is privileged." *Id.* The district court held that the narrative portion of the search report was protected by the attorney-client privilege because it "include[d] the features of the invention (relayed from the prosecuting firm and originating with the client) and a comparison of those features with the cited references." *Id.*, at *4; *see also id.* (redacted portion of search report was analogous to search report held to be privileged in another case because report "'requested legal advice concerning the patentability of the invention and served as an aid in completing the patent application'") (quoting *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000)). *MPT* does not stand for the broad proposition that any patent search report is privileged, but for the narrower point that a search report containing client confidences or legal analysis is privileged. Because Engle's patent list contains neither, *MPT* is inapplicable.

Likewise, the decision in *Burroughs Wellcome Co. v. Barr Labs, Inc.*, 143 F.R.D. 611, 616 (E.D.N.C. 1992), recognized that the attorney-client privilege has been "extended . . . to prior art searches and discussions and documents related to the prior art if they contain or reflect communications made in connection with requests for legal advice or a legal opinion as to patentability," but it does not hold that a document that contains only factual information is similarly protected. To the contrary, *Burroughs* held that "a summary of filed patent applications" was "not privileged," but that three paragraphs of the summary "contain[ing] confidential communications" were privileged. *Id.* at 618. Applying *Burroughs* here, Engle's patent list, which simply compiled information about 645 patents, would not be privileged because it contains neither client confidences nor legal analysis.[2]

---

[2] The Court observes that *Burroughs* held that "the compilation of search results" of an attorney's prior art searches were protected, not by the attorney-client privilege, but the attorney work product doctrine, 143 F.R.D. at 624, which Abbott has not invoked here.

Nor does *Application of Minebea Co., Ltd.*, 143 F.R.D. 494 (S.D.N.Y. 1992), or *Applied Telematics, Inc. v. Sprint Commc'ns Co., L.P.*, No. CIV. A. 94-4603, 1996 WL 539595 (E.D. Pa. Sept. 18, 1996), support Abbott's position. The question in *Minebea* was whether a letter from an attorney to his client "conveying the results of the [prior art] search and an opinion as to patentability of the patents-in-suit as well as another invention" was protected by the attorney-client privilege. 143 F.R.D. at 502. At issue in *Applied Telematics* was a letter "reporting results of patent search and providing patentability opinion." 1996 WL 539595, at *6. In each case, the court held that the document was privileged because it contained, not solely factual information like the patent list at issue here, but a confidential legal opinion. *See Minebea*, 143 F.R.D. at 502 ("there [wa]s no question" that attorney's opinion "regarding the patentability of . . . the inventions underlying the patents-in-suit" was "legal in nature" and protected by attorney-client privilege); *Applied Telematics*, 1996 WL 539595, at *6 (letter was privileged because it "is a legal opinion and contains legal analysis").

Nor, finally, does *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, No. CIVA5:03CV0530(DEP), 2003 WL 22225580 (N.D.N.Y. Sept. 17, 2003), support Abbott's privilege claim. That case involved "a letter from a registered patent agent to Sears' patent prosecution counsel concerning the results of a prior art search[,]" but the court's decision does not describe the contents of the letter in further detail. 2003 WL 22225580, at *1. "The central question" for the court was whether "communications between the attorney and the agent, with no direct involvement of the client," were protected by the attorney-client privilege. *Id.*, at *4. After the court found that the privilege could apply to such communications, it ruled that the patent agent's letter reporting the search results was privileged: "Equally certain is the fact that had the prior art search been performed by the prosecution attorney, or someone within his or her firm, in all likelihood it would have been deemed worthy of attorney-client protection." *Id.* The Court is not persuaded by *Cargill*, given that the decision neither described the contents of the prior art search report (such that it is unclear whether the report contained only factual information, only legal analysis, or a combination of both) nor cited any authority for its conclusion that a prior art search conducted by a lawyer "in all likelihood . . . would have been deemed" privileged. *Id.*

Abbott's position is also undermined by two decisions from the Northern District of Illinois that have held that the factual results of a patent search are not protected by the attorney-client privilege.

In *C&F Packing Co. v. IBP, Inc.*, No. 93 C 1601, 1997 WL 619848, at *3 (N.D. Ill. Sept. 29, 1997), the court held that a letter between two of plaintiff's attorneys "containing the results of a patent search" was not privileged. The court explained that "[t]he document does not contain any client confidences, and there is no indication that it was intended to be confidential." In contrast, the court held that a letter from a client to his attorney, which analyzed "various patents and their relationship with each other," was privileged because it was "a request for legal

analysis of a patent[.]" *Id.* Likewise, in *SiLite, Inc. v. Creative Bath Prods., Inc.*, No. 91 C 5920, 1993 WL 384562, at *4 (N.D. Ill. Sept. 28, 1993), the court held that the attorney-client privilege did not protect "a design patent search" from disclosure. Although the court did not describe the contents of the search report in detail, it explained that "the touchstone of the attorney-client privilege is that the communications only are privileged, not any underlying facts or data," and that "confidential research information is not the equivalent of confidential legal communications." *Id.*; *see also Hydraflow, Inc. v. Enidine Inc.*, 145 F.R.D. 626, 634-35 (W.D.N.Y. 1993) (letter from client's outside patent attorney to client's other patent attorneys that "described five patents resulting from their patent search" and "summarized each patent" not privileged because "it does not disclose any client confidences").

The decision in *Baxter* also supports the Court's conclusion that the patent list is not privileged. Plaintiff there moved to compel defendant to supplement its privilege log "to provide a detailed description of each withheld document and redaction, including specifically identifying whether the listed documents and redactions reference or relate to the Patents-in-Suit." *Baxter*, 2019 WL 3408813, at *2 (internal emphasis omitted). Defendant maintained that the identity of the patent discussed in each document or redaction was privileged, but the court found that defendant "has not shown that the identity of a patent discussed or analyzed in an otherwise-privileged document is itself protected by the attorney-client privilege." *Id.*, at *3. As the court explained, merely "identifying a particular patent in a log entry does not disclose the substance of the *legal advice* contained in the logged document or redaction[.]" *Id.* (emphasis in original). The court also found that its conclusion was "reinforced by the fact that the circumstances surrounding an accused infringer's discovery of a patent are not themselves protected by the attorney-client privilege." *Id.*, at *4 (internal quotation marks omitted). Requiring Abbott to disclose the patent list here is not unlike compelling the defendant in *Baxter* to identify the patents that were discussed in a privileged document: both disclosures reveal only factual information – here the information about the patents that Engle's search generated, in *Baxter* which patent was discussed in an otherwise privileged document – not the substance of any privileged legal advice.

Fourth, the Court rejects Abbott's argument that the patent list is privileged because the list "reflects," and could indirectly reveal, Engle's "legal search strategy" and "procedure" and "Abbott's confidential information." [128] 6, 11-12.

The Court recognizes that the attorney-client privilege protects documents that, if disclosed, would "indirectly . . . reveal the substance of a client confidence." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. at 514. But Abbott's privilege claim here stretches the rule past its breaking point. To begin, Abbott cites no case holding that factual information generated by an attorney's patent search is privileged solely (or even partly) because its disclosure could permit an opposing party to infer what

search terms and parameters the attorney used to execute his search or the confidential information that informed the search. As discussed above, the cases hold that it is an attorney's legal analysis or a client confidence in the patent search report – rather than the inferences about the searcher's methods that could be drawn from the results – that triggers the privilege. *See Burroughs*, 143 F.R.D. at 618; *Minebea*, 143 F.R.D. at 502; *MPT*, 2006 WL 314435, at *4; *Applied Telematics*, 1996 WL 539595, at *6. Moreover, this case is distinguishable from *RTC Industries*, on which Abbott also relies, because that case involved an email between plaintiff's principal and plaintiff's other employees that "discusse[d] patent searches conducted on behalf of" plaintiff's law firm. 2020 WL 1433828, at *7. The court found that this discussion by the firm's clients "disclosed enough about the strategy, the procedure, and results of the searches" to be protected by attorney-client privilege. It was that "discuss[ion]" of the patent searches by the clients, rather than the purely factual search results, that supported the privilege claim. Lastly, accepting Abbott's privilege claim would eviscerate the rule that facts themselves, even those discovered by an attorney, are not privileged. Abbott's contention that plaintiffs could use the contents of the patent list to reverse engineer the search terms and parameters that Engle used, the legal judgments that Engle allegedly made in preparing the search parameters, and, finally, the confidential information that Engle learned from Ihochi that allegedly informed his search process is simply too attenuated (and unsupported by case law) to support its invocation of the attorney-client privilege.

Finally, the Court rejects Abbott's contention that plaintiffs' motion is a backdoor effort to relitigate the denial of their prior motion to compel. [128] 5, 11, 19. In its first decision, the Court held that "Engle's legal analysis of Evolve's patent portfolio is protected by the attorney-client privilege." [112] 4. That holding was based on Engle's declaration that Ihochi had sought his legal advice about Evolve's patent portfolio, and that Engle had shared his "initial analysis of Evolve's patent portfolio based on [his] legal knowledge and training of patent law in confidence with Ihochi." [*Id.*] (internal quotation marks omitted). The Court made this finding in the context of deciding that Abbott had properly redacted a portion of a PowerPoint slide prepared by Ihochi because it contained a summary of Engle's legal advice. Nothing in the Court's decision held or implied that the patent list, which was not at issue in the prior motion or before the Court for in-camera review, was also privileged.

In sum, the patent list at issue contains only factual information. Because the attorney-client privilege does not protect mere factual information, or patent lists devoid of legal analysis or client confidences, Abbott must produce the patent list within fourteen days of the entry of this order.

## B. Response to Interrogatory No. 17

Plaintiffs also ask that Abbott be compelled to supplement its response to plaintiffs' Interrogatory No. 17. [114] 5. That Interrogatory asks Abbott to "[d]escribe the circumstances under which Abbott first became aware of the Asserted Patents, including but not limited to, the persons who first became aware of the Asserted Patents, the dates when each person first became aware of the Asserted Patents, how each person became aware of the Asserted Patents and the identity of all documents constituting, describing, commenting upon, reflecting, referring or relating to the existence of the Asserted Patents." [*Id.*] 2 n.1 (some internal capitalizations omitted). Plaintiffs contend that Abbott served a "one-sentence response" to this Interrogatory stating that "it had knowledge of the Patents-in-Suit at least as early as May 2019." [*Id.*] 2-3. Plaintiffs argue that this response was deficient because Abbott "did not provide a specific date or say whether May 2019 was its first awareness" or "explain the circumstances of how it became aware of the patents-in-suit." [*Id.*].

Abbott responds that plaintiffs did not engage in good-faith meet-and-confer efforts to resolve this dispute before filing the motion to compel. [128] 16. Abbott contends that plaintiffs did not identify Interrogatory No. 17 on its list of discovery issues to be addressed at the parties' meet-and-confer session, and it maintains that its response to Interrogatory No. 17 was not "substantively discuss[ed]" during the meet and confer. [*Id.*].

Plaintiffs argue in their reply brief that the issue was adequately hashed out in the meet and confer. [138] 6. They cite an exchange in the transcript of the meet and confer where plaintiffs' counsel argued that Engle's patent list – the privileged nature of which was the principal issue in dispute – was "directly relevant to an interrogatory we've asked you [*i.e.*, Abbott] about the awareness of the patents." [*Id.*].

The Court denies plaintiffs' motion to compel as to Abbott's response to Interrogatory No. 17 without prejudice because the parties have not exhausted their meet and confer obligations. Indeed, on December 11, 2020 – after the pending motion to compel was fully briefed – the parties filed three documents concerning Abbott's recent supplement to its initial response to Interrogatory No. 17. First, Abbott filed a notice with the Court that it had supplemented its objections and responses to Interrogatory No. 17. [158] 1. Plaintiffs then filed a response to Abbott's notice, claiming that Abbott's supplement "leaves a few issues unresolved," including (1) when Abbott first became aware of the patents in suit, (2) whether this issue implicates Abbott's business strategy, which Abbott has claimed is privileged, and (3) whether others besides Engle and Ihochi were aware of plaintiffs' patents. [159] 2-3. Finally, Abbott filed a reply stating that plaintiffs' response amounted to "an unsolicited argument for its pending motion to compel[.]" [160] 1. These submissions show that the parties had not reached an impasse before plaintiffs filed their motion to compel, and that they are engaged in an ongoing exchange as to the adequacy of

Abbott's recent supplemental response. Moreover, Abbott's position opposing plaintiffs' request to supplement appears somewhat related to its claim that the patent list is privileged. [128] 18-19; [159] 2. Because the Court has rejected that position, the parties are advised to consider further meet-and-confer efforts in light of the ruling set forth in this order.

## Conclusion

For the foregoing reasons, plaintiff's motion to compel production of patent list [113] is granted in part and denied in part. Abbott must produce the patent list within fourteen days of the entry of this order. However, plaintiff's motion is denied as to the issue of Abbott's response to Interrogatory No. 17 because the parties have not exhausted their meet-and-confer obligations under Local Rule 37.2.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: December 17, 2020**